First issue I'll address is the search warrant issue and the first topic there is the government's claim that defense counsel at trial waived the suppression issue by saying no objection when evidence that was the subject of the suppression motion was offered in evidence like the drugs and the phone. Well it's not just a matter of saying no objection and you waived it. The case law, the circuit's case law, says you have to consciously and intentionally waive it and there are a lot of facts in this record that indicate that defense counsel had never would have consciously and intentionally waived the suppression issue. The first reason is the counsel knew that this evidence would be would be prudent at the start of trial to get the district court to cede to the notion that I don't need I don't need to object to every every piece of evidence that I tried to suppress as it came in in order to preserve the suppression issue. Yeah. That would be good practice. This was not well handled and but I'll get I was gonna say this for later but this is a trap for the unwary. I'm not trying to set myself up as someone. I mean if it was truly a waiver yeah there yeah I don't know that any case has ever said that yeah well waiver just to let just to let it in but but counsel should guard against that problem. Yes yes but the district court might say the suppression was sufficiently detailed or convoluted that I think I would like you to to flag as the evidence comes in. Yes. Where suppression was was a reversible error if you will. Yes yes it certainly should have been handled better and I'm not trying to say that this is a way to do it. I shouldn't have to be making this argument. Counsel should have just said judge I'm when it comes in I'm not gonna say anything let's just leave it at that and then everybody knows that there's no intent to waive anything. But the problem is though sometimes the judges look over to the defense table and say the exhibits been offered is there any objection? So well you know if you haven't set it up ahead of time lawyer can't just say nothing. You have to set it up ahead of time. Yeah that's it doesn't really there's no mutual understanding if that isn't done. But here defense counsel knew that this was the key evidence against the against Mr. Petrick. This was the drugs this was the phone this was their whole case. So the idea that he's of the essence here I'd suggest you move to the merits and I mean you've certainly made this point. Okay well just just one more one more thing. Defense counsel was told by the judge at a hearing prior to trial that your suppression motion was I thought would be an easy call. I was gonna be able I thought I'd be able to suppress the evidence. But your brief was so good I had to work really hard on this. It was a lot closer call than I thought it was. Your brief was really excellent. Okay now defense counsel and his client hear that. Okay the defense counsel is not going into trial the idea I'm gonna waive this consciously and this part. Moving to the merits. The problem with this warrant is it's a cut and paste of a warrant issued a week earlier that was never executed for a different vehicle. And now which are you talking about the Chrysler warrant now? No the Chrysler warrant yes that was paid yes. The Camaro warrant was never executed. I thought there was GPS on all three vehicles. Well it would have been nice if they'd said that they had GPS for the 300. Are you jumping to the search warrant now and BIPOR? Are you starting with chronologically with the GPS warrants? No I'm going with the warrant for the Chrysler 300. Search the Chrysler. Yes I'll get but this is all the same issue for the tracker warrant. So what I'm saying here for this warrant largely applies or applies to a certain extent to the tracker warrants because they're based on informants with no basis of knowledge, no stated basis of reliability. And this applies to all of them because they all incorporate that same informant information. I know but you've really got an uphill on that one. Well here's it's recited reliable and it's found routes adequate reliability. I thought you were going to focus on there is no probable cause to go from the GPS searching tracking to the search of the Chrysler. I will but I can't just leave the the informant part out of it. My point there is that the inquiry is totality of the circumstances. Is there reliable information and veracity under the totality of the circumstances? When you have a rule that says these people are automatically reliable because we we stamp the label CRI on them. I thought the informants selling different law enforcement officers the same thing. Well similar things yes. But they don't say how there's ongoing active drug distribution by this defendant using multiple vehicles. And not one of them says how they know any of that. What case says that you need that as long as there's a track record of reliability and in this case even corroboration among the informants. The point I make in my brief is that the ultimate standard here or governing cases Illinois versus Gates which is the totality of the circumstances. And in the totality of the circumstances to just short-circuit the inquiry to require have some idea of veracity and basis of knowledge you short-circuit you cut out the totality of the circumstances. You're not looking at the totality. So that rule should not be applied in just per se or rote fashion. So that's my point about why the these CRIs are not somehow automatically reliable. And there's good reason to doubt them. They're saying he's selling this. They don't. You didn't answer Judge Collins' question of do you have a case that makes this point. And that I would be interested in that. That's Illinois versus Gates. And I'm not saying. Come on that's general law. I'm the question he asked about. Basis of knowledge. Is there a case that makes your point about base of knowledge or would this be breaking new ground? I could not find one in the circuit. No I acknowledge that. How about another circuit or a state court or anybody? I'm simply saying that the rule in light of Supreme Court precedent isn't tenable. Wait is the answer I couldn't find anything as opposed to I couldn't find anything in the circuit? Well no I agree I couldn't find anything. I agree. All right. Okay. So let me move on from no basis of knowledge to the fact that this warrant is just a cut and paste of a warrant that they obtained for the Chevrolet pickup a week earlier on September 14th. Isn't it all sort of the same conduct? It's sort of a progression of using multiple vehicles and going back and forth to and from the locations. So I mean you can say cut and paste but if it's cutting and pasting relevant information for the next search warrant application why isn't that okay? Well they're not getting anything. It would be one thing if that Chevrolet the warrant for the Chevy pickup issued a week earlier if they had executed that and found some drugs. But they didn't. They didn't do anything with that warrant. They said I didn't have the opportunity to execute it. Tracking is not searching for drugs. I thought that I thought the tracking generally corroborated that there were three cars in play and they were traveling from Duluth to Chicago and returning at times through rural Wisconsin. I mean there was a lot of corroboration of what the informants that was going on. But this warrant says that only as to the Camaro and the Chevy pickup. It doesn't cite any tracking information to say that we believe that the vehicles now in the Twin Cities. Chrysler warrant are you talking about? Exhibit number four that the last warrant. The search warrant. The search warrant yes. There was a Chrysler tracking warrant. Yes. And that was cut and pasted from the Camaro and I assume you're you know from the prior to. Well the warrant for the Chrysler doesn't say anything that we have tracking information that it's now that this Chrysler is now down in the cities the source city Minneapolis St. Paul and it's it's there they don't that's not in this warrant. They so they've got no tracking information about that it's even in the Twin Cities. This in Affiant up who's a deputy up in Chicago County whom they're just feeding this information has no idea about anything not part of the even in the Twin Cities. And there's nothing in the warrant to say we now believe it's in the Twin Cities ready it's either picked up or it's about to leave with drugs because that's supposedly the way this person operates. It doesn't say that. It just it ends the affidavit basically ends by saying we've now got a warrant for the Chevy pickup. Well I mean if you read it it makes no sense. Why are you fine fine put that in there but that's where it ends. There's nothing about the Chevy or the Chrysler 300. So they've and how you rely on good faith when the Affiant has no idea that the vehicle whether the Chrysler 300 is even in the Twin Cities is even in a position to pick up drugs is even coming back. They started the process of getting this warrant before the Chrysler 300 was even in the cities. They do this early in the afternoon on the 19th. There's testimony about that in the motion hearing transcript and in the trial transcript. So they've got this process of getting warrants not only in Chisago County but multiple counties. So there were multiple judges right? Yes. And they all issued these warrants and so you've got multiple judges who thought this was sufficient to issue the warrant. Well I don't think that the numbers of judges who did it necessarily makes it valid. But my point is that they're just getting this in shotgun fashion. The vehicle they don't even know the vehicle is on its way yet. They didn't know that till later. But they're already in the process of getting these warrants. They just wanted warrants in place. I thought my notes from your brief is that the Chrysler was tracked to the defendant stated his cousin's home. Yes but they didn't put that in the warrant. That's not in the warrant. Well so what? Well the warrant is the basis for the search and they're not indicating to the judge that we even have a reason to believe that the vehicle is in the source city getting drugs. That's not in there. All they're doing is this very inferential strained connection to weak connection to well he was going to the Twin Cities in the Camaro on September 8th came back drove through areas Wisconsin looked like he might be dropping off drugs which they don't know they didn't they were just basically surmising and then the same thing for the Chevy pickup. That's all they have. That's where the warrant basically ends is talking about the Chevrolet the Chevy pickup a week earlier. So this affiant knows not I mean how can he be acting in good faith he knows nothing at all except what's in the warrant. He has no information that okay well this you know it is down there right now you know there's probably a basis to think it's picking up drugs. Now if the if the if the warrant is faulty only because there was not information put in the warrant affidavit that in fact the investigating officers knew the Chrysler was there and on this circum these suspicious circumstances that night why why you just assert Leon doesn't apply why doesn't Leon apply in that situation? Well there it's entirely unreasonable to look at this warrant and to think that they had a basis to stop Patrick's vehicle in Chisago County. They had no idea the affiant and the judge had no idea it had even been down there. How is that good faith? They're not acting in good faith. I see I mean but Leon focuses on officers executing the warrant. It's a different inquiry than whether the should have known there wasn't enough here. Well I agree the cases say officers but I think you have to look at the affiant. I mean they that's how they got this warrant. They weren't acting in good faith in in in feeding this limited information to the affiant. No I'm saying that I recognize the cases speak of the officers but I'm saying here this is a circumstance where they just kept the affiant in the dark as to how little information there was. I'm into my rebuttal time. Thank you. Mr. Slaughter. May it please the court. Good morning your honors. My name is Alan Slaughter and I'm here on behalf of the government. I was not part of the motions hearing and practice below but I was a part of the trial team and a part of Mr. Patrick's sentencing as well. At base we do ask that the court affirm the assessment with regard to the four search warrants that you've already asked counsel questions about. I'd like to start just with the probable cause analysis and the determination that there was a substantial basis for each one of those four search warrants to issue. I'd like to make sure they just take it from the top. Each one of those four search warrants averted began with a description of the task force and their understanding of circumstances and that was that Mr. Patrick had a lengthy criminal history both at the state and federal level that it included methamphetamine distribution but also violent crimes. They in fact say they they are familiar with him based on this conduct. It also then begins to describe these four separate confidential reliable informants. And I understand that at least based on your briefing that you were reluctant to put or the basis of knowledge that the C.I.'s had for what they provided for for security purposes. Is that correct? Yes your honor. So it was there wouldn't there be a way to at least generically say the basis of knowledge even if it's not a deal breaker it seems that that does certainly move you closer to probable cause if you can give the magistrates some reason why these individual people would have this information. Certainly your honor there could be but I know that well in all of our cases there's no bright line standard when it comes to basis of knowledge especially in this case given Mr. Patrick's history agents were definitely reluctant to do so and instead they. There's no no bright line rule right but why couldn't you've done something couldn't couldn't you've done given some generalized explanation of why these people might know anything about sort of just general comments like he's moving a lot of meth. That's pretty general. Understood your honor. Well I think that each each one of the affidavits continue with different averments with regard to the informants themselves and in the context of each one of those particular provisions they're giving at least some information with regard to immediate or more contemporaneous information. But still not the basis. What you're saying is that you don't think you have to put in any basis of knowledge is sort of what I'm getting from the answer. Yes your honor. More importantly and clearly veracity reliability and basis of knowledge this many Aguilar factors are part of just the totality of the circumstances analysis but it is not the end all be all. In this circumstance the agents focused on providing reliability information which they did for all four of those individuals and then as the district court found and the magistrate judge before found there were specific examples of how they had a track record with law enforcement and how they had used those informants successfully and they went with that instead of going with the basis of knowledge and in essence outing each one of the informants and that did bear out to be the case in this circumstance and that was demonstrated during the sentencing hearing. Were the C.I.s eventually named? They were your honor. At what point in the process? Three weeks before the original trial date at some point in time in May of 2016 a couple months before or about a month and a half before we went to trial. I think it might have been even been in April of that year. And I don't mean to be making too much of a big deal of this but it seems to me that once you executed the warrant the assumption would be that Mr. Patrick would be in custody so whether those people were named then or later might not be a significant difference for purposes of their safety. Yes I agreed that might be the case your honor. I think with Mr. Patrick he already and it's described in every one of the affidavits he had a history of in essence creating false alibis. He had gone to trial in an earlier matter a preceding matter. The agents were conscious of the fact that Mr. Patrick upon learning information about informants was likely to try to do something about what they had told law enforcement each one of those informants. And again that bore out to be the case. We had a relatively lengthy presentment at sentencing with regard to obstruction of justice because of the false alibis that he had created. In fact it was and those informants were a part of that false alibi provision. In fact before trial a decent amount of our pretrial preparation was dealing with the possibility of Mr. Patrick putting in false alibi testimony or evidence in the form of letters and other things. And some of the informants including two in particular were a part of his imaginations pretrial. And after trial Mr. Patrick again using the names of some of the informants approached them had other people his agents approached them and tried to in the law enforcement. Did they? They did not. So nobody none of the C.I.'s did come around to assist Mr. Patrick is what you're saying. Correct Your Honor. Going back just to the general affirmance and your honors all asked questions with regard to the totality of the circumstances for each one of the respective tools that were applied for. Four separate different judges reviewing each one of these respective tools. Every one of these for recently out of prison has begun selling significant quantities of methamphetamine and that he's working with other individuals to do so. And they by name identify some of those known other methamphetamine dealers. Combination of the information each one of these judges were warranted in concluding that there was a fair probability that evidence might be garnered with regard to investigating Mr. Patrick and his affairs. This goes specifically to the GPS information where they just they're telling that court respectively each one of those courts. Your Honor we need to know where this guy is going. We think he might be going to see other people. And that's what the request was. And each one of those judges said you know what that is. There's a fair probability that you're going to garner that kind of evidence. The fourth search warrant. Let's focus on the Chrysler search warrant. Yes, Your Honor. Why is probable cause supported for that warrant supported by information known but not included in the affidavit? For purpose of the probable cause analysis, Your Honor. Specifically the night at the Cousin's house with Chrysler parked there. Looking just at the complaints that are made here with regard to the sufficiency of the allegations. Comprehensive totality of the circumstances analysis. And you brought this up in questions with counsel. We are looking at an ongoing drug distribution investigation. They discuss in that fourth search warrant the circumstances around the other vehicles. As well as the fact that Mr. Patrick is known to own and has admitted ownership of that Chrysler 300 only a couple of months before. Admitted it to law enforcement. Most certainly fair and probable for Do you think that warrant could have constitutionally named all three vehicles? I'm sorry, Your Honor. I misunderstood. But that search warrant issued on the 19th or 20th have named all three vehicles as opposed to the Chrysler. Yes, Your Honor. I think it could have. Search the contents of each one of these vehicles based on a fair probability that they might find contents tied to the methamphetamine investigation. There's a focus on the fact that there's no vermin that we'd seen Mr. Patrick with drugs or that drugs might be found. That car in the source city. Right. When they knew it was there but for one reason or another didn't include it in the warrant It's clear that it's acknowledged both. I mean, Magistrate Judge Brisbois quoted that language from the search warrant and he's making clear to everyone he understands that there's this temporal issue with regard to the Silverado truck of vermin. But looking at what the judge was presented with that day that evening and I want to make sure that we're clear that the record made clear that the agents are out doing what they need to do to try to figure out what Mr. Patrick is doing that night. There was constant ongoing surveillance. They followed him down and they had seen him. They had seen him earlier in the day driving the truck and the teal Camaro was on was being pulled by it. He was taking the Camaro to another residence. And within just an hour or two later, he's in the Chrysler 300 and on his way down to the Twin Cities. When it comes to the averments in the and I'm switching gears to a certain degree, Your Honor, with regard to good faith and the automobile exception, which we haven't even touched upon. But it's clear that the averments in that fourth search warrant, they provided an abundance of additional information with regard to their concern for safety. The fact that there might be firearms involved, the fact that he's been seen recently with firearms and methamphetamine by a fifth confidential informant. Now, acknowledge that they don't provide reliability information, but they provide a track record information with regard to that part of the warrant in particular. They are laying out it's clearly kind of an ongoing document. It's got some cutting and some pasting in different places, but they have certainly I'm judged out doubt all in reviewing this application had to understand as the application makes it clear that they are looking for the Chrysler to 300 that they are looking for the contents of that vehicle. The fact that the 19th September 19th information isn't in there does not is not fatal to this totality of the circumstances analysis. Looking at the entirety of the circumstances involved, taking a step back away from just the probable cause of the deferential probable cause substantial basis analysis that this court just like the district court and the magistrate judge applies to these four search warrants. There was good faith and it does go your honor to your question. Leon, good faith goes to what was going on and what those agents thought was happening. Day of event, even at trial, it was borne out in executing. Yes, your honor. I assume the government disagrees that all you look at is what the find in the magistrate judge were dealing with. Well, respectfully, I mean, that would make no sense. Often we have affiance on behalf of agents out in the field who believe they are obtaining a valid search warrant and they in good faith go and execute that search warrant. And that's borne out by the testimony that happened in this case. I mean, they were waiting to try to get a warrant. They were making arrangements. He had different people staged all over the state or at least generally around the metropolitan area between here and Duluth trying to do what they needed to do to stop Mr. Patrick. Leon does say if the warrant application was so facially lacking in probable cause, then you can't rely on it in good faith. So aren't the executing officers accountable for what's in the application, whether they've seen it or not? Certainly, your honor. But this none of the applications involved in this matter were so facially lacking in indicia to consider it to have misled Judge Dowdle or for her to have made a mistake with regard to the issuance of the search warrant itself. I think that's the crux of the matter. And going back just to the point that was made with regard to the Chrysler, the 300 where the methamphetamine was found, we have yet to touch upon the automobile exception. And the trial and your honors are entitled to look at entirely the entirety of the record with regard to the automobile exception. And it's clear that these officers had more than sufficient probable cause to believe that there would be a methamphetamine in that car or at least evidence tied to Mr. Patrick's methamphetamine distribution. Ongoing surveillance of the three separate vehicles. You had three and a half days using three separate vehicles. They watch him as he goes down in the metropolitan area. Here he stops at multiple car parts stores. And yes, innocent facts are not necessarily probable cause worthy. But in this instance, they corroborated their belief set that he was meeting people. They saw him multiple times stopping and going, brazing his hood. It was clear the officers thought that they had to look under the hood of whatever vehicles he was driving. And the vehicle in question on the 20th, by the time they got to him, was the Chrysler 300. Those facts, all the facts combined, the fact that they watched him overnight, Investigator Rebecca Kopp, that evening for eight hours sat about 25, 30 yards away from him conducting surveillance while Mr. Patrick was underneath the hood, likely working on his car in part, but also making sure, we believed he was paranoid at the time, making sure that he was close to that methamphetamine before he went back up to the Twin Cities. The trip before that, just six days before that, Mr. Patrick had taken less than six hours coming down to the Twin Cities, spending some time down here and tripping back. And again, as has been described, those trips back were through rural areas and the trips up to the Twin Ports, he had multiple stops at different locations that were suspected to be tied to his drug distribution customers. Locations that were subsequently searched pursuant to warrants that were garnered the day after the stop itself. So in the end, in looking at the totality of the circumstances, the automobile exception would apply to the search of the 2005 search itself. If there aren't any other questions, I see my time has run up. I'd ask the court to affirm the judgment below. Thank you, Your Honor. Mr. Neivo, rebuttal? I'll just address the discussion about the automobile exception. The officers who were sitting on Mr. Patrick, watching him the night of the 19th morning of the 20th, they didn't see any activity at the house that would indicate he was picking up drugs. And this later testified to a trial. What they were doing was putting in a stereo system. But if you just look at what the surveilling officers said, they didn't have any basis to believe he had gotten drugs. And they didn't see him anywhere else. There's no testimony at the motion hearing that earlier in the day, when he was in the Twin Cities area, he had picked up any drugs. They couldn't be sure of that at all. So unless there are other questions, that's all I have. Thank you. Thank you, Counsel. Mr. Neivo, I see you were appointed under the Criminal Justice Act and the court appreciates your assistance once again. The case has been well briefed and argued. We'll take it under advisement.